## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

IVAN M. TAYLOR.
    *Plaintiff*,

    v.

GO-GETTERS, INC. *et al.*
    *Defendants*.

Civil Action No.  ELH-20-3624

## MEMORANDUM OPINION

In this employment discrimination action, the self-represented plaintiff, Ivan M. Taylor, has filed an eleven-count complaint against his former employer, Go-Getters, Inc. ("Go-Getters") and two of his former colleagues, Dimitrios Cavathas and Delores Watson.  ECF 1 (the "Complaint").   Taylor claims he was subjected to a hostile work environment on account of his sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq* ("Title VII").  Plaintiff also alleges violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights.  *Id.* at 9-10, 12-13.  Further, he asserts claims for breach of contract and wrongful discharge.  *Id.* at 10-12. He seeks compensatory and punitive damages, as well as reinstatement.  *Id.* at 7.

Watson, Cavathas, and Go-Getters have jointly moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 6), supported by a memorandum of law (ECF 6-1) (collectively, the "Motion").[1]  They urge dismissal of the Complaint, claiming that several of the causes of action that plaintiff invokes are inapplicable and that Taylor's remaining allegations fail to state a claim for which relief may be granted. *See id.* at 5-15.

---

[1] Defendants indicate that they appended two exhibits to the Motion.  *See* ECF 6 at 3 n.3. But, no exhibits were docketed.  *See* Docket.

Plaintiff opposes the Motion, asserting that dismissal is premature and the Court should grant him the opportunity for a jury to determine defendants' liability.  ECF 11 (the "Opposition"). Defendants have replied.   ECF 12 (the "Reply").  They argue that, taking as true the facts as alleged in the Complaint, plaintiff's assertions cannot survive a motion to dismiss.  *Id.*

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion, but with leave to amend plaintiff's Title VII claim as to defendant Go-Getters (Count 1), as well as his breach of contract claim (Count 4).

## I.       Factual Background

Taylor, a Black male (ECF 1 at 14), was an employee of Go-Getters during the relevant period.  *Id.* at 14-16.[2]  Watson was his supervisor.  *Id.* at 14.  And, Cavathas was a "final policy maker for Defendant Go-Getters."  *Id.* at 9.  The suit is rooted in the untimely death of plaintiff's fiancé, Charleita Stanley, who died on May 13, 2018, from breast cancer, at the age of 48.  *Id.* at 14.  Plaintiff alleges that he was subjected to a hostile work environment between May 2018 and November 2018, which culminated in his termination from Go-Getters on November 12, 2018. *Id.* at 14-17.

In the days following Stanley's death, Taylor allegedly asked Watson if he could take some time off from his job "to collect [his] thoughts and try to get [himself] together."  *Id.* at 14.  Watson discouraged him from doing so.  *Id.*  However, Taylor obtained permission from another Go-Getter employee, Pam Karpin, to take "some time to make burial arrangements."  *Id.*

On May 23, 2018, Taylor had another conversation with Watson, in which Watson stated that other supervisors at Go-Getters, including Cavathas, had an unspecified "issue" with Taylor.

---

[2] According to defendants, Go-Getters is a non-profit organization that provides services on Maryland's Eastern Shore to persons with psychological disabilities.  ECF 6-1 at 2.

*Id.* Moreover, she told Taylor that one of these officials told Watson that Taylor was lucky to have her as his supervisor, because without Watson's support, "he would be gone." *Id.* And, Watson warned plaintiff that he was being watched. *Id.*

According to Taylor, Watson "totally changed after the death of [his] fiancée." *Id.* In particular, he avers that Watson began calling him outside of work hours and while plaintiff was on vacation. *Id.* During these phone calls, Watson "constantly" reminded Taylor that he had "a target on [his] back" and asserted that "Black Males historically do not do well at Go-Getters." *Id.* (emphasis omitted). Watson continued this behavior, even after Taylor asked her to stop. *Id.* And, Watson allegedly refused to assist Taylor with various job-related issues, often responding to Taylor's requests for help with "sarcastic comments." *Id.*

Taylor asserts that Watson felt "threatened" by the strong relationships that Taylor enjoyed with his coworkers. *Id.* As a result, Watson "always complained about staff not doing or being behind in their work." *Id.* And, in Taylor's telling, Watson often distracted the staff and "was always in staff's office." *Id.* Moreover, when one of Taylor's coworkers asked Watson to "stop distracting the team," Watson responded by further harassing Taylor, telling Taylor he was "behind in [his] paper work and services," and falsely stating that Taylor had "to go see a new referral" with her. *Id.*

In addition, plaintiff reports that Watson had forced him to perform three errands for her, all of which were unrelated to his job duties. *Id.* at 15. Specifically, he alleges that in July 2018, he was "forced to drive [Watson] to her house and repair her lawn mower." *Id.* And, in September 2018, Taylor was twice forced to drive Watson to purchase furniture and transport it back to her house. *Id.*

According to the Complaint, plaintiff's issues with Watson came to a head in early November 2018. On Thursday, November 8, 2018, Watson returned to work after taking a few days off. *Id.* Taylor approached Watson and pointed out that he had not tried to call her while she was away. *Id.* Plaintiff then asked Watson to "stop calling and harassing [him] when [he] was off." *Id.* Watson responded with "deception and threats of termination," and warned plaintiff that he "had to do what she said or face termination." *Id.* Moreover, she reminded Taylor that another Go-Getters official did not like plaintiff and would be happy if Watson fired him. *Id.*

Plaintiff did not work the next day, in order to tend to his mother, who was experiencing health issues. *Id.* And, on Saturday, November 10, 2018, Watson called Taylor. *Id.* She asked about his mother's condition, but the conversation quickly turned to plaintiff's alleged failures to perform his work duties. *Id.* In response, Taylor once more asked Watson to stop "harassing [him] on [his] days off" and threatened that, if she persisted in doing so, he would resign. *Id.*

After plaintiff spoke with Watson, he discussed his difficulties at work with his mother. *Id.* Taylor then sent Watson a text message, which states: "Mom said call back and say you will think about it before you resign." *Id.* Plaintiff indicates that he then spoke with Watson and "informed her [he] would talk to her more on Monday about [his] possible resignation." *Id.* But, Taylor insists: "I did NOT resign on my day off." *Id.*

The following Monday, November 12, 2018, plaintiff did not go to work, as he was still caring for his mother. *Id.* Nevertheless, he "received numerous calls" from a Go-Getters employee, Janie Twilley, who asked Taylor to "reset [his] password and check an email from Pam Karpin . . . ." *Id.* This email, according to plaintiff, reflected that plaintiff had tendered a verbal resignation to Watson over the phone, which she had accepted. *Id.* Taylor called Karpin and explained that he had only "talked about resigning." *Id.* Karpin initially agreed to a meeting with

plaintiff to address the matter. *Id.* But, after plaintiff asked to reschedule the meeting, Karpin sent Taylor an email stating that she had read plaintiff's text messages to Watson and believed that Taylor had effectively resigned his position with Go-Getters. *Id.* at 15-16.

Taylor indicates that he then reached out to Cavathas "in [an] attempt to speak with him." *Id.* at 16. However, Cavathas was "very rude," "accused [plaintiff] of having poor judgment," and told plaintiff "not to contact him." *Id.*

The Complaint reflects that plaintiff "was also informed that [he] would not receive payment for [his] sick leave [or] vacation time . . . ." *Id.* In addition, Taylor alleges that the "life insurance that [he] paid into for 18 years was cancelled immediately" and his "health insurance was cancelled [on] November 30, 2018." *Id.* Accordingly, he avers that he intends to "file a wage claim complaint with State of Maryland Department of Labor Licensing and Regulations." *Id.*

Plaintiff also claims that he applied for State unemployment benefits following his termination. *Id.* Thereafter, he received a "Notice of Benefit Determination Letter," which indicated that he "was discharged" from Go-Getters "[d]ue to discussing the possibility of quitting with his supervisor." *Id.* Moreover, it reported that there was insufficient evidence to establish that Taylor's actions "constituted misconduct in connection with the work." The letter also reflected that Taylor was approved to collect unemployment benefits, if he was otherwise eligible to receive them. *Id.*

And, the Complaint includes summaries of how Watson treated two female staff members after they threatened to resign from Go-Getters.

First, Taylor alleges that Watson refused altogether to accept the resignation of one of Taylor's coworkers, Helen Bowman, a white woman who works as a program coordinator at Go-Getters. *Id.* at 16-17. According to plaintiff, Bowman's husband died in September 2012, and

Bowman is "still grieving the loss of her . . . husband." *Id.*  She also becomes "more emotional" at various times throughout the year. *Id.*  On one such occasion, Bowman told Watson that she wanted to quit from her position. *Id.*  Watson responded by comforting Bowman, asking her to reconsider, and giving her the rest of the day off, with pay. *Id.*  In addition, Watson told Taylor and a colleague of Taylor to be "extremely nice" to Bowman because she "does a wonderful job in the day program" and "[w]e don't want her to quit." *Id.*

Second, Taylor indicates that Watson reacted poorly when a female employee, Allicia Arrivello, threatened to resign from her position.  *See id.*  Arrivello worked at Go-Getters as a "CSA," a role that required her to visit the homes of Go-Getters's various members. *Id.*  After one such visit, Arrivello "unknowingly took a bedbug home with her." *Id.*  The next day, Arrivello came into work and told Watson that she was "going to tender her resignation." *Id.*  In plaintiff's telling, Watson "immediately went into damage control mode," assuring Arrivello that "she is a valuable employee." *Id.*  Moreover, Watson refused to accept Arrivello's resignation and gave her an opportunity to return home to "talk it over with [her] dad." *Id.*  However, when Arrivello returned to work, Watson began to act "very distant" and, moreover, "tried to intimidate" Arrivello. *Id.*  Plaintiff reports that Arrivello's last day of work at Go-Getters was November 21, 2017. *Id.*

The Complaint does not indicate whether or on what date he filed a "charge" of discrimination with the Equal Employment Opportunity Commission ("EEOC").  However, the Complaint reflects that the EEOC issued plaintiff a "Notice of Right to Sue Letter," which he received on September 22, 2020. *Id.* at 6.

This suit followed on December 14, 2020.  In Count 1, Taylor asserts that Go-Getters discriminated against him based on his sex, in violation of Title VII, by subjecting him to a hostile work environment. *Id.* at 5, 9.  Plaintiff also alleges that defendants violated his right to procedural

and substantive due process, as guaranteed by the Fourteenth Amendment to the Constitution (Counts 2 and 3) as well as Article 24 of the Maryland Declaration of Rights (Counts 10 and 11). *Id.* at 9-10, 12-13.  And, in Counts 4 through 9, Taylor avers that Go-Getters is both directly and vicariously liable for the conduct of Cavathas and Watson, which, in his view, amounted to a breach of contract as well as wrongful discharge, predicated on a hostile work environment based on sex. *Id.* at 10-12.

To remedy his alleged injuries, plaintiff asks the Court to grant him compensatory damages in an amount exceeding $1.5 million, and punitive damages of more than $1 million.  *Id.* at 7.  In addition, plaintiff asks the Court to "reinstate plaintiff to his position," to award plaintiff "all backpay [and] front pay in a substantial sum exceeding two years salary and benefits," and "to issue a permanent injunction enjoining Defendants and all others acting in concert from maintaining an unconstitutional employment system."  *Id.*

## II.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Services Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young,* 569 U.S. 221 (2013); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

7

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing'" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n

unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v.*

*Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg. v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am.*

*Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows. Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998); *see USA Eng. Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, __F. App'x__, 2021 WL 3162671, at *2 (4th Cir. July 27, 2021). And, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 882 F.3d at 167. In other words, the "general rule" is that "the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint." *Goines*, 882 F.3d at 165. But, "in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* at 167.

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, —U.S.—, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P.

10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

As mentioned, defendants indicate that they appended two exhibits to the Motion. ECF 6-1 at 3 n.3. Specifically, they claim to have submitted a "copy of the text messages referenced in [the Complaint] and which [plaintiff] contends were the stated basis for his termination, including the message regarding Plaintiff calling back to say he will consider his resignation." *Id.* In addition, defendants assert that they included an affidavit from Watson, "attesting to the authenticity of the text messages." *Id.* However, defendants have failed to include either exhibit with the Motion.

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

In reviewing the Motion, I am mindful that plaintiff is self-represented. Therefore, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P.*

*Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint). As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278.

### III.    Discussion

Defendants marshal several arguments in support of the Motion. Notably, the Motion posits that plaintiff's Title VII claim must be dismissed because Taylor has not explained how the alleged discriminatory conduct related to his sex. ECF 6-1 at 5-7. Moreover, defendants contend that the conduct described in the Complaint was not sufficiently severe or pervasive so as to create a hostile work environment under Title VII. *Id.* at 7-9.

In addition, they contend that plaintiff's various due process claims are unavailing because Go-Getters is not a state actor. *Id.* at 10, 14-15. The Motion also notes that all of plaintiff's breach

of contract theories fail to state a claim because plaintiff has not identified any contractual agreement between Taylor and Go-Getters, let alone how defendants' conduct amounted to a violation of its provisions.  *Id.* at 10-12.  And, defendants aver that plaintiff cannot recover under a theory of wrongful discharge because this action in tort does not apply where State and federal statutes provide an analogous avenue for relief.  *Id.*at 12-14.  Thus, in defendants' view, none of plaintiff's claims can survive, and the Complaint must be dismissed.

Plaintiff does not substantively address these arguments in his Opposition.  *See* ECF 10.  Rather, he indicates only that the Court should grant him the opportunity to "gather information concerning the merits of the case."  *Id.* at 1.  And, he avers that his suit "should be allowed to go forward to a jury of his peers for the trier of fact to determine the liability of the defendants[ ]."  *Id.*

As defendants see it, the Opposition "only underscores the reasons dismissal of the Complaint is warranted."  ECF 12, ¶ 2.  In particular, defendants contend: "Even viewing the facts of the Complaint in the light most favorable to Plaintiff, it is clear that there are no legal grounds on which he could obtain any of the relief sought."  *Id.* ¶ 5.  Thus, the Reply concludes: "Defendants and this Court need not spend time and resources on discovery and a trial of Plaintiff's unsupported claims."  *Id.*

### A.  Title VII

Title VII prohibits "two categories of employment practices."  *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015).  The "two proscriptions" are "often referred to as the 'disparate treatment' (or 'intentional discrimination') provision and the 'disparate impact' provision . . . ."  *Id.*  As to disparate treatment, an employer is barred from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. The phrase "terms, conditions or privileges of employment" is "an expansive concept." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quotation marks and citation omitted). The Supreme Court has referred to discrimination based on one of these five characteristics as "status-based discrimination." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351 (2013).

Plaintiff's Title VII claim is expressly styled as one for hostile work environment based on his sex. ECF 1 at 9. His male gender does not foreclose such a claim. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women . . . .") (citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983)). Specifically, Taylor claims that, "[a]s a direct and proximate result" of defendants' actions, he "suffered public humiliation, emotional distress, and a property interest of employment with the Defendant." *Id.*

Before filing suit under Title VII, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (private sector employees), *superseded on other grounds by* 42 U.S.C. § 1981(b); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976) (federal employees); *see also McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016). To do so, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days of "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). This period is extended to 300 days in a deferral state, such as Maryland. *See Garnes v. Maryland*, RDB-17-1430, 2018 WL 276425, at *4, n.8 (D. Md. Jan. 3, 2018); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F App'x 256 (4th Cir. 2008).

Moreover, "a complainant is entitled to a 'right-to-sue' notice 180 days after the charge is filed." *Fort Bend Cty. v. Davis*, —U.S.—, 139 S.Ct at 1847 (2019) (citing § 20003-5(f)(1); 29 CFR § 1601.28.) "And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer." *Fort Bend Cty.* 139 S.Ct. at 1847 (citing § 2000e-5(f)(1)).

Taylor claims that he was terminated from his position on November 14, 2018. ECF 1 at 16. Although plaintiff does not specify the date on which he filed a charge of discrimination with the EEOC, he asserts that the EEOC issued a "Notice of Right to Sue" letter to him on September 22, 2020. *Id.* at 6. And, he filed suit on December 14, 2020. *See id.*[3]

### 1. Defendants Cavathas and Watson

Taylor lodges a Title VII claim against each defendant. *See* ECF 1 at 9. But, defendants assert: "Title VII does not provide for any individual liability, including against supervisors." ECF 6-1 at 15 (emphasis omitted). In 42 U.S.C. § 2000e-16(c), it states: "An employee . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action, as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." Moreover, in *Brooks v. Arthur*, 626 F.3d 194, 203 (4th Cir. 2010), the Fourth Circuit recognized that "Title VII 'foreclose[s] individual liability'" (quoting *Lissau v. S. Food Serv.*, 159 F.3d 177, 181) (4th Cir. 1998)). *See also Abeles v. Metro Wash. Airports Auth*, 676 F. App'x 170, 176-77 (4th Cir. 2017) (recognizing that supervisors are not liable in their individual capacities for Title VII violations).

---

[3] Exhaustion under Title VII is not jurisdictional. *See Fort Bend Cty.*, 139 S.Ct. at 1846, 1850. Rather, it is a "claim-processing rule[ ] that must be timely raised to come into play." *Id.* at 1846. Defendants have not challenged plaintiff's Title VII claim on exhaustion grounds.

Accordingly,  the individual defendants are not proper defendants as to plaintiff's Title VII claim.  Therefore, I shall dismiss Count 1 as to the individual defendants, for failure to state a claim.

### 2.   Proof of Discrimination

In general, *at trial* a plaintiff "may establish a discrimination claim under Title VII through two avenues of proof." *Thomas v. Delmarva Power & Light Co.*, 715 F. App'x 301, 302 (4th Cir. 2018) (per curiam) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Nassar*, 570 U.S. 338). The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997); *see Thomas*, 715 F. App'x at 302.  The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g.*, *Young v. United Parcel Serv., Inc.*, 569 U.S. 206, 228-29 (2015) (construing the Pregnancy Discrimination Act); *Sempowich v. Tactile Systems Technology, Inc.*, ___ F.4th ___, 2021 WL 5750450, at *3 (4th Cir. Dec. 3, 2021) (outlining the two approaches); *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the *McDonell Douglas* framework).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production" at trial.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted).   If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination."  *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017).  The *McDonell Douglas* framework is

intended to be flexible, "not onerous," and is designed to uncover "circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, it "is 'not intended to be an inflexible rule.'" *Young*, 575 U.S. at 228 (citation omitted). But, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). And, even under the *McDonnell Douglas* approach, the "'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Burdine*, 450 U.S. at 253); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

Reference to these methodologies of proof often serves to inform a court's evaluation of a motion for summary judgment. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (recognizing that "a Title VII plaintiff may avoid summary judgment by proceeding under the burden – shifting framework established in *McDonnell Douglas Corp*"); *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas*"). However, at this juncture, the question is whether plaintiff has stated a plausible claim for relief. Nonetheless, reference to the elements of a prima facie claim helps to gauge the adequacy of the factual allegations in terms of plausibility.

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion*

*Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). But, the *McDonell Douglas* framework is intended to be flexible, "not onerous." *Burdine*, 450 U.S. at 253, designed to uncover circumstances which give rise to an inference of unlawful discrimination." *Id.* Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, and "is 'not intended to be an inflexible rule,'" *Young*, 575 U.S. at 228 (citation omitted), the plaintiff in a Title VII case is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253.

To state a prima facie claim of intentional discrimination, the plaintiff must allege "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Goode v. Cent. Va. Legal Aid Soc.*, Inc., 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012)); *see also Matias v. Elon Univ.*, 780 F. App'x 28, 31 (4th Cir. 2019); *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 203 (4th Cir. 2018).

As to the satisfactory job performance factor, a plaintiff need not "show that he was a perfect or model employee. Rather, a plaintiff must only show that he was qualified for the job and that he was meeting his employer's legitimate expectations." *Haynes*, 922 F.3d at 225. And, with regard to adverse action, it must have "occurred under circumstances that raise a reasonable inference of unlawful discrimination . . . ." *Sempowich*, 2021 WL 5750450, at *3 (citing *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 n.8 (4th Cir. 2020); *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007)).

At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." Further, the Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, 557 U.S. 1138 (2016).

However, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. Cty. of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly* the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods*, 855 F.3d at 648, the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" *See also Swaso*, 698 F. App'x at 747-48. Thus, the question at the motion to dismiss stage is whether the plaintiff has stated "a plausible claim for relief under Title VII . . . ." *Ciociola v. Balt. City Bd. of*

*Sch. Comm'rs*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016); *see Bing*, 959 F. 3d at 617.

### 3. Hostile Work Environment

In Count 1, Taylor asserts that he was subjected to a hostile work environment while employed at Go-Getters, because of his sex. ECF 1 at 9. A hostile environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment[.]'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).

To state a *prima facie* claim for hostile work environment under Title VII, the plaintiff must allege that there was: "'(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race[, color, sex, religion, or protected activity]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)).

Notably, a hostile work environment claim may involve incidents that occur over the course of "a series of days or perhaps years . . . ." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Thus, for a hostile work environment claim, "[i]t does not matter, for purposes of [Title VII], that some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* at 117. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

The first element, unwelcome conduct, "is not a high hurdle." *Strothers v. Cty. of Laurel, Md.*, 895 F.3d 317, 328 (4th Cir. 2018). The Fourth Circuit has explained that "an employee can

demonstrate that certain conduct is unwelcome simply by voicing [his] objection . . . ." *Id.* at 328-29. Moreover, "the nature of the conduct may indicate whether or not the conduct is unwelcome." *Id.* at 329.

As to the second element of a hostile work environment claim, the plaintiff must allege that he was harassed or otherwise discriminated against "because of" his protected class. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000) (citing *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 142 (4th Cir. 1996)). The plaintiff may satisfy this burden by showing that, "but for" his protected class, he would not have suffered discrimination. *Id.* However, "harassment due to personality conflicts will not suffice. Some persons, for reasons wholly unrelated to [the plaintiff's protected class], manage to make themselves disliked." *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008).

As to the third element, a hostile work environment exists under Title VII when the "'workplace [is] permeated with discriminatory intimidation, ridicule, and insult . . . .'" *Boyer-Liberto*, 786 F.3d at 281 (some quotations and citation omitted) (quoting *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 339 (4th Cir. 2006)); *see Harris*, 510 U.S. at 21; *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 158 (4th Cir. 2018). The Fourth Circuit has stated that the plaintiff must allege that "the environment would reasonably be perceived, and is perceived, as hostile or abusive." *Boyer-Liberto*, 786 F.3d at 277 (citing *Harris*, 510 U.S. at 22).

The "severe or pervasive" requirement has both subjective and objective components. *Harris*, 510 U.S. at 21-22; *see EEOC v. Cent. Wholesalers Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Thus, "[w]hether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Oncale.*, 523 U.S. at 81); *see Irani v. Palmetto Health*, 767 F. App'x 399, 416 (4th

Cir. 2019); *Nnadozie*, 730 F. App'x at 158.  However, the plaintiff does not need to demonstrate that the work environment is "psychologically injurious."  *Id.*; *see Harris*, 510 U.S. at 21-22.

"Viable hostile work environment claims often involve repeated conduct . . . because, 'in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'"  *Boyer-Liberto*, 786 F.3d at 277 (quoting *Morgan*, 536 U.S. at 115-17); *see Irani*, 767 F. App'x at 416.  But, "an 'isolated incident[ ]' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'"  *Boyer-Liberto*, 786 F.3d at 277 (alterations in original) (citation omitted).

The Court stated in *Boyer-Liberto*, 786 F.3d at 278 (citation omitted) (alteration in *Boyer-Liberto*): "In measuring the severity of harassing conduct, the status of the harasser may be a significant factor—e.g., a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals."  *See also EEOC v. Fairbrook Medical Clinic, P.A.*, 609 F.3d 320, 329 (4th Cir. 2010) ("When evaluating the context in which harassment takes place, we have often focused on the 'disparity in power between the harasser and the victim.'") (citation omitted); *Jennings v. Univ. of N.C.*, 482 F.3d 686, 697 (4th Cir. 2007) (en banc) ("Any age disparity between the harasser and his victim is also relevant to gauging whether there was a hostile or abusive sexual environment.").

However, the "'[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII."  *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 21) (other citations omitted).  And, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, (1998) (internal quotation

marks and citations omitted); *see also Boyer-Liberto*, 786 F.3d at 294.  Similarly, "complaints premised on nothing more than 'rude treatment by [coworkers]', 'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII.'" *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (internal citations omitted); *see Nnadozie*, 730 F. App'x at 161-62.  Indeed, Title VII does not constitute "a general civility code." *Oncale*, 523 U.S. at 80.

The determination as to "severe and pervasive" is not, and "'by its nature cannot be, a mathematically precise test.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 22). Moreover, "[n]o single factor is dispositive, as [t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Sunbelt Rentals*, 521 F.3d at 315 (quoting *Harris*, 510 U.S. at 23 and *Oncale*, 523 U.S. at 81-82) (internal citations and quotation marks omitted). The objective determination requires the court to "'look[ ] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the] employee's work performance.'" *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 304 (4th Cir. 2019) (quoting *Harris*, 510 U.S. at 23).

Plaintiff alleges that he was subjected to a hostile work environment based on his sex.  *See* ECF 1 at 5, 9.  In support of his claim, Taylor contends that Watson "constantly" phoned him outside of work hours, reprimanded him for failing to perform his work-related duties, warned him that "Black Males historically do not do well at Go-Getters," failed to provide him with effective assistance, and made sarcastic comments.  *Id.* at 14 (emphasis omitted).  According to Taylor,

Watson told him that he was "lucky" that she was his supervisor because, without her support, he would be fired.  *Id.*  In addition, Taylor alleges that Watson forced him to complete three non-work-related errands for her.  *Id.* at 15.   And, plaintiff reports that Cavathas told him that he had poor judgment and asked plaintiff not to contact him.  *Id.*

In the light most favorable to plaintiff, I shall assume that these allegations are sufficient to demonstrate, if proven, that Taylor experienced unwelcome conduct. *See Strothers*, 895 F.3d at 328 ("The first element of a hostile environment claim, unwelcome conduct, is not a high hurdle."). But, even if proven, they do not establish that the conduct was so severe or pervasive as to constitute a hostile work environment.

Courts in this Circuit have consistently declined to find a hostile work environment based on facts far worse than those described in the Complaint.   *See Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (per curiam) (stating that allegations of a supervisor mockingly yelling at the plaintiff in a meeting, "repeatedly harping on a mistake" by the plaintiff, and "unfairly scrutinizing and criticizing" plaintiff's failure to follow directives, fall "far short of being severe or pervasive enough to establish an abusive environment") (internal alterations omitted); *Pounds v. State of Md. Judiciary*, SAG-20-3379, 2021 WL 1751154, at *4 (D. Md. May 4, 2021) (dismissing Title VII claim where plaintiff alleged, among other things, that supervisor communicated with plaintiff on a daily basis "in a demeaning and belittling way," referred to plaintiff as "you people," and directed "subordinates to closely scrutinize and target Plaintiff") (internal quotation marks omitted); *Chand v. Braithwaite*, 3:20-1578, 2020 WL 9209284, at *2 (D.S.C. Sept. 1, 2020) (granting a motion to dismiss as to a hostile work environment claim where plaintiff's supervisor allegedly intimidated plaintiff, provided plaintiff with negative performance evaluations, required plaintiff to check in routinely via email when working remotely, and denied

plaintiff various workplace privileges); *Vincent v. MedStar S. Md. Hosp. Ctr.*, No. 16-cv-1438-TDC, 2017 WL 3668756, at *9-*10 (D. Md. Aug. 22, 2017) (finding plaintiff failed to allege hostile work environment where supervisor yelled at employee, called her "stupid," refused to communicate with her, and restricted her access to the computer system); *Young v. Giant Food Stores, LLC,* 108 F. Supp. 3d 301, 308 (D. Md. 2015) (explaining that general allegations that a supervisor disrespected plaintiff, frequently yelled at the plaintiff, refused to provide plaintiff with resources made available to male colleagues, and ignored plaintiff's calls and messages, were insufficient to sustain a hostile work environment claim).

Taylor also asserts that Watson told others at Go-Getters that he had resigned from his position, when he had only threatened to do so. *See id.* at 15-16. According to plaintiff, this misrepresentation resulted in his termination from Go-Getters. *Id.* at 16. However, plaintiff failed to allege facts that, if proven, would establish that Taylor's sex was a factor in his termination. *Boyer-Liberto*, 786 F.3d at 277

One of the two comparators described in the Complaint suggests that Watson also reacted poorly to a threat to resign made by a female employee. Specifically, plaintiff posits that when one of his coworkers threatened to quit, Watson became "very distant" and tried to intimidate the coworker. *Id.* Moreover, Taylor's coworker, according to the Complaint,  no longer works for Go-Getters. *Id.* Thus, even if Watson responded inappropriately to threats to resign, she did so without regard to the employee's sex.

And, the Complaint is otherwise devoid of facts that would tend to show that the actions of defendants Watson and Cavathas were predicated on a discriminatory bias concerning plaintiff's sex. To be sure, Taylor avers that Watson warned him that "Black Males historically do not do well at Go-Getters." *Id.* at 14 (emphasis omitted). However, as defendants contend, such a

statement does not amount to a showing that Watson "personally bore" a discriminatory bias towards plaintiff on account of his sex, let alone that, "because of that bias," Watson discriminated against Taylor.  ECF 6-1 at 6.

To the contrary, based on the allegations, Watson's interactions with Taylor appear to be consistent with the ways in which Watson engaged with the rest of plaintiff's team.  The Complaint reflects that Watson "always complained about staff not doing or being behind in their work," which "annoyed the entire team . . . ."  ECF 1 at 14.  *See Young v. Austin,* RDB-21-880, 2021 WL 4820535, at *6 (D. Md. Oct. 14, 2021) (explaining that "a plaintiff must plead that the harassment was 'a product of [discriminatory] animus rather than the kind of personality conflict that pervades many a workplace'") (alteration in *Young*) (quoting *Ziskie,* 547 F.3d at 227).  Nor are there any facts to show that, on account of his sex, Taylor faced any institutional bias while employed at Go-Getters.

Accordingly, I am of the view that plaintiff has failed to plead a claim of sex discrimination under Title VII.  Therefore, I shall dismiss Count 1 as to Go-Getters, without prejudice and with leave to amend.

## B.  Federal and State Due Process Claims

### 1.  Fourteenth Amendment

In Count 2 and Count 3, plaintiff alleges that defendants violated his rights to procedural and substantive due process, as guaranteed by the Fourteenth Amendment to the Constitution.  ECF 1 at 9-10.   The Due Process Clause of the Fourteenth Amendment provides, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. X IV, § 1.

In general, in order to succeed on a due process claim, the plaintiff must show: (1) that he "has a constitutionally protected 'liberty' or 'property' interest"; and (2) that he "has been 'deprived' of that protected interest by some form of 'state action.'" *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172 (4th Cir.1988). But, the Motion contends, and plaintiff does not dispute, that all named defendants are private persons or entities. ECF 6-1 at 10. Accordingly, defendants assert that these claims are unavailing. *Id.*

In a civil context, claims of constitutional violations are often brought pursuant to 42 U.S.C. § 1983.[4] Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1893 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*,

---

[4] Neither side has cited 42 U.S.C. § 1983.

635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).  But, § 1983 "does not regulate private conduct."  *Peltier v. Charter Day School, Inc.*, 8 F.4th 251, 261 (4th Cir. 2021)

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'"  *Davison*, 912 F.3d at 679 (quoting *Philips*, 572 F.3d at 180); *see also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982).

Of import here, the Due Process Clause of the Fourteenth Amendment "'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'"  *Wahi,* 562 F.3d at 615 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)).  Therefore, to state a claim under the Fourteenth Amendment, the defendant "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions."  *DeBauche v. Trani,* 191 F.3d 499, 506 (4th Cir. 1999).  Put another way, "private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient."  *Id.* at 507 (citation omitted).

As specified, Go-Getters is a private corporation.  *See* ECF 6-1 at 10.  Therefore, plaintiff cannot state a claim against defendant for a violation of his constitutional right to due process. Accordingly, I shall dismiss Count 2 and Count 3 of the Complaint, for failure to state a claim.

### 2.  Article 24 of the Maryland Declaration of Rights

In Count 10 and Count 11 of his suit, plaintiff asserts that defendants are liable for violations of Article 24 of the Maryland Declaration of Rights.  ECF 1 at 12-13.  But, defendants

argue that "[t]he protections of the Maryland Declaration of Rights do not apply in the absence of state action . . . ." ECF 6-1 at 15. And, because "Defendants are private citizens," defendants contend that these counts "must be dismissed with prejudice." *Id.*

Article 24 provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

Article 24 is the State's constitutional guarantee of due process and equal protection of the law. *Town of Easton v. Pub. Serv. Comm'n*, 379 Md. 21, 41 n.11, 838 A.2d 1225, 1237 n.11 (2003). Thus, it "is the state law equivalent of the Fourteenth Amendment of the United States." *Hawkins v. Leggett*, 955 F. Supp. 2d 474 (D. Md. 2013) (quotation marks omitted). And, Article 24 is ordinarily interpreted *in pari materia* with its federal analog. *See, e.g.*, *Littleton v. Swonger*, 502 F. App'x. 271, 274 (4th Cir. 2012) (stating that Article 24 is "construed in pari materia with the . . . Fourteenth Amendment[ ]"); *Dent v. Montgomery Cty. Police Dept.*, 745 F. Supp. 2d 648, 661 (D. Md. 2010) (stating that Article 24 is "construed *in pari materia* with the . . . Fourteenth Amendment[ ]"); *Tyler v. City of College Park*, 415 Md. 475, 499-500, 3 A.3d 421, 435 (2010) (recognizing that Maryland courts "interpret Article 24 *in pari materia* with the Fourteenth Amendment to the United States Constitution."); *Doe v. Dept. of Pub. Safety & Corr. Servs.*, 185 Md. App. 625, 636, 971 A.2d 975, 982 (2009) (same).

In other words, Article 24 "has been interpreted to apply 'in like manner and to the same extent as the Fourteenth Amendment of the Federal Constitution,' so that 'decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities.'" *Frey v. Comptroller of Treasury,* 422 Md. 111, 176, 29 A.3d 475, 513 (2011) (quoting *Attorney Gen. of Maryland v. Waldron,* 289 Md. 683, 704, 426 A.2d 929, 941 (1981)). "Therefore, the analysis

under Article 24 is, for all intents and purposes, duplicative of the analysis under the Fourteenth Amendment." *Hawkins,* 955 F. Supp. 2d 474.

Like the Fourteenth Amendment, Article 24 "require[s] the defendant to be a state actor." *Anisimov v. Hosp. Partners, LLC*, CCB-09-2536, 2010 WL 723755, at *3 (D. Md. Feb. 24, 2010) (citing *Okwa v. Harper*, 360 Md. 161, 201, 757 A.2d 118, 140 (2000) ("Constitutional provisions like Articles 24 or 26 of the Maryland Declaration of Rights . . . are specifically designed to protect citizens against certain types of unlawful acts by government officials.")). But, based on the allegations, defendants are not state actors.

Accordingly, for the same reason that the Complaint fails to state a claim under the Fourteenth Amendment, Counts 10 and 11 must also be dismissed.

### C.  Breach of Contract

Counts 4, 6, and 8 assert State law claims for breach of contract against Go-Getters, under theories of direct and vicarious liability.  ECF 1 at 10-11.  In particular, plaintiff alleges that Cavathas and Watson "fabricated a justification for terminating Taylor's employment, thereby failing to provide justifiable cause pursuant to employment policies and rules of Go-Getters."  *Id.*

Defendants urge the Court to dismiss these claims, arguing that plaintiff has "failed to identify a particular employment contract, pointing only to the fact that he was employed and unspecified employment policies and rules."  ECF 6-1 at 11 (internal quotation marks omitted). Moreover, defendants contend that plaintiff's claims as to vicarious liability regarding Go-Getters "are both duplicative and inadequately pled."  *Id.*

"[I]nterpretation of private contracts is ordinarily a question of state law."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989); *accord James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004). Here, the Court's jurisdiction

regarding plaintiff's breach of contract claim is premised on supplemental jurisdiction.  *See* 28 U.S.C. § 1367.[5]  And, "[w]hen choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011).

The forum state is, of course, Maryland.  As to contract claims, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g.*, *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014).

The parties appear to dispute whether Taylor and Go-Getters had a contractual agreement. *See* ECF 1 at 10-11; ECF 6-1 at 10-12.  But, defendant implies that Maryland law should govern whether plaintiff has stated a claim for breach of contract.  *See* ECF 6-1 at 11 (citing Maryland law).  And, plaintiff does not suggest otherwise.    Thus, I shall apply the law of Maryland as to these counts.

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.,* 365 Md. 166, 175, 776 A.2d 645, 651 (2001); *see RRC Northeast, LLC v. BAA Maryland, Inc.,* 413 Md. 638, 658, 994 A.2d 430, 442 (2010).  In other words, "[i]t is the parties' agreement that ultimately determines whether there has been a breach." *Mathis v. Hargrove,* 166 Md. App. 286, 318-19, 888 A.2d 377, 396 (2005).  In *Polek v. J.P. Morgan Chase*

---

[5] In the absence of diversity jurisdiction, the Court lacks subject matter jurisdiction over plaintiff's State law claims.  Plaintiff has not established diversity jurisdiction.  In particular, the Court has not been provided with any information as to Go-Getters's citizenship.  However, if plaintiff has a viable federal claim, the Court may exercise supplemental jurisdiction over a State law claim, such as a claim for breach of contract.  *See* 28 U.S.C. § 1367(a).

*Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012), the Maryland Court of Appeals said: "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" (Citation omitted); *see also Robinson v. GEO Licensing Co., L.L.C.,* 173 F. Supp. 2d 419, 423 (D. Md. 2001).

Defendants maintain that plaintiff cannot bring a claim for breach of contract under Maryland law.  As noted, they argue that he has failed "to identify a particular employment contract, pointing only to the fact that he was employed and unspecified employment policies and rules." ECF 6-1 at 11 (internal quotation marks omitted).  In support, they rely on *RRC Northeast, LLC, supra*, 413 Md. 638, 994 A.2d 430.  *See id.* at 10.  In that case, the Maryland Court of Appeals said, in relevant part, *id.* at 655, 994 A.2d at 440 (emphasis in original):

> It is well-established in Maryland that a complaint alleging a breach of contract "must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc.,* 279 Md. 476, 480, 369 A.2d 566, 569 (1977) (emphasis in original).  In addition, we have observed that "'the necessary allegations of fact sufficient to state a cause of action . . . in a simple factual situation vary from those in more complex factual situations and a form of declaration useful in the former situation may not be sufficient as a guide in preparing a declaration in the more complex case.'" *Id.* (quoting *Read Drug v. Colwill Constr.,* 250 Md. 406, 413, 243 A.2d 548, 553 (1968)).  Finally, in considering the sufficiency of a complaint alleging breach of contract, "any ambiguity or uncertainty in the allegations is to be construed against the pleader." *Id.*; *Carder v. Steiner*, 225 Md. 271, 276, 170 A.2d 220, 222 (1961).

Judge Hazel's opinion in *Dern v. Liberty Mut. Ins. Co.*, GJH-15-1737, 2015 WL 8665329 (D. Md. Dec. 11, 2015), is also instructive.  He stated, *id.* at *4:

> In the second count of the Complain[t], Plaintiff[ ] seeks to recover for breach of contract.  ECF No. 2 at ¶¶ 14-15(2).  Defendant seeks dismissal of this claim on the ground that the Complaint is so vague that it fails to properly state a claim.  ECF No. 9-1 at 4-5.  The Court agrees. In the Complain[t,] Plaintiff only alleges that she has paid the required monthly premiums and that Defendant has

"refused to adequately compensate [her] . . . for the damage [the fire] caused to Plaintiff's vehicle." ECF No. 2 at ¶ 12(2). Plaintiff further alleges that, because no work has begun toward rebuilding the house, she has been unable to move back into her home. *Id.* at ¶ 13. These allegations are insufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555.

In Maryland, a Complaint alleging a breach of contract "must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *RRC Ne., LLC v. BAA Md, Inc.*, 994 A.2d 430, 440 (Md. 2010) (quoting *Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 369 A.2d 566, 569 (Md. 1977)) (emphasis in original). Plaintiff has failed to allege what contractual duty was breached. Notably, the Complaint does not indicate what provision of the insurance agreement has been implicated, how Defendant's conduct breached any such provision, or what damage occurred to her vehicle for which Plaintiff was purportedly undercompensated. *See* ECF No. 2 at ¶ 12(2). Count two of the Complaint is so vague that Defendant cannot reasonably prepare a response, and, accordingly, the claim must be dismissed [without prejudice].

Certainly, *Dern*, 2015 WL 8665329, does not stand for the proposition that, in order to survive a motion to dismiss, a complaint must cite the specific provisions of a contract that a defendant allegedly breached. Nonetheless, the plaintiff's failure to do so in that case was one of several reasons why the court granted the motion to dismiss. *See id.* at *4. Indeed, the complaint at issue in *Dern* provided a paucity of information about the insurance contract at issue. *See* GJH-15-1737, ECF 2. It alleged simply that "Plaintiff had/has a contract with the Defendant in which she paid/pays a monthly premium to the Defendant in exchange for homeowner's insurance coverage on her residence" (*id.* ¶ 4) and the policy "purported to pay the necessary amount of money to the Plaintiff in order to address the situation in the event that the home was damaged or destroyed by fire." *Id.* ¶ 15.

Of import here, employment is presumptively at-will under Maryland law. *Towson Univ. v. Conte,* 384 Md. 68, 79, 862 A.2d 941, 947 (2004); *see Bontempo v. Lare*, 444 Md. 344, 363-64, 119 A.3d 791, 803 (2015) ("There is a presumption in Maryland law that an employment relationship is 'at-will'—*i.e.*, terminable by either party at any time, with or without cause."). Put

another way, under Maryland law, an at-will employee can be fired for any reason, so long as the discharge does not contravene a clear mandate of public policy. *See, e.g.*, *Molesworth v. Brandon*, 341 Md. 621, 629, 672 A.2d 608, 612 (1996); *Adler v. Am. Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981). However, an at-will arrangement can be altered by contract. *See Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 13 98 A3d. 264, 272 (2014) ("Indeed the presumption of at-will employment can be defeated through the inclusion of a just-cause requirement, or by specifying a duration of employment . . . .").

Taylor has failed to allege either an actual or implied contract. And, he has not asserted that Go-Getters maintained an employment policy that altered his presumptive at-will status. Rather, Taylor contends only that defendants Watson and Cavathas "fabricated a justification for terminating his employment, thereby failing to provide justifiable cause pursuant to employment policies and rules of Go-Getters." ECF 1 at 10. This "fabrication" presumably refers to Watson's alleged statement to other Go-Getters officials that Taylor offered Watson his resignation over the phone. *Id.* at 15. But, plaintiff has failed to explain how doing so would amount to a violation of Go-Getter's alleged employment practices.

In sum, I am persuaded that defendant has failed to adequately plead a breach of contract claim. Notably, he does not provide any facts to establish a contractual relationship of any sort with the individual defendants. Accordingly, I shall dismiss Count 4 as to the individual defendants. But, as to Go-Getters, I shall dismiss Count 4 without prejudice, and with leave to amend. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999) ("The federal rule policy of deciding cases on the basis of the substantive rights . . . rather than on technicalities requires that [a] plaintiff be given every opportunity to cure a formal defect in his pleading.") (quoting 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1990)).

Counts 6 and 8 are entirely duplicative of Count 4.  Each Count amounts to an assertion that Go-Getters is liable for its employees' conduct to the extent that the employees breached Go-Getters' unspecified employment policies.  Therefore, I shall dismiss Count 6 and Count 8, as duplicative.

### D.  Wrongful Discharge

As to Counts 5, 7, and 9, plaintiff claims that Go-Getters is directly and vicariously liable for the tort of wrongful discharge, because defendants Watson and Cavathas created a hostile work environment that was "filled with extensive sexual inuendo [sic] comments and behavior."  ECF 1 at 10, 11, 12.  Moreover, according to the Complaint, because Taylor was "unwilling to go along with a Hostile Work Environment," he was unlawfully terminated.  *Id.*  Thus, in his view, defendants' conduct violated "the public policy for the State of Maryland."  *Id.*

The Motion urges dismissal of Count 5 because, under Maryland law, the common law tort of wrongful discharge "does not apply where statutes such as Title VII and the comparable Maryland anti-discrimination statutes already provide a remedy for the conduct complained-of."  ECF 6-1 at 13 (citing *Makovi v. Sherwin Williams Co.*, 316 Md. 603, 626, 561 A.2d 179, 189 (1989)).  And, defendants posit that plaintiff's claims asserting vicarious liability in Counts 7 and 9 are "duplicative, not actionable, and must be dismissed."  *Id.* at 14.

In particular, defendants contend that Maryland statutory law contains a "companion remedy" for a claim of wrongful discharge when an employer has 15 or more employees.  ECF 6-1 at 13; Maryland Code (2021 Repl. Vol.), §§ 20-601(d) and 20-606 of the State Government Article ("S.G.").  And, they note that plaintiff has named "at least 17 employees" of Go-Getters at the relevant time, so as to implicate Maryland statutory law.  ECF 6-1 at 13.

As earlier explained, when considering a State law claim, the Court must apply the law of the forum state (including as to choice of law), whether proceeding under supplemental or diversity jurisdiction. *See, e.g.*, *Nash v. Montgomery Cty.*, GJH-20-1138, 2021 WL 1222874, at *7 n.7 (D. Md. Mar. 31, 2021); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008).  In tort actions, Maryland adheres to the rule of *lex loci delicti*, meaning it applies the substantive law of the state where the wrong occurred.  *Ben-Joseph*, 529 F. Supp. 2d at 606 (citing *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 619, 925 A.2d 636, 648-49 (2007)) (other citations omitted). Because plaintiff's claim is premised on events that allegedly occurred in Maryland, the law of Maryland applies.

Tort liability for common law wrongful discharge has been recognized in Maryland "as a judicially-created exception to the employment at-will doctrine."  *Newell v. Runnels*, 407 Md. 578, 646, 967 A.2d 729, 769 (2009) (citing *Adler*, 291 Md. 31, 432 A.2d 464); *see Molesworth*, 341 Md. at 629-30, 672 A.2d at 612-13. The doctrine is narrow, however.

In order to assert a viable common law claim of wrongful discharge, an employee must demonstrate that "a clear mandate of public policy . . . was contravened by the discharge."  *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 423, 823 A.2d 590, 602 (2003). Moreover, the public policy must be "reasonably discernible from prescribed constitutional or statutory mandates."  *Wholey v. Sears Roebuck*, 370 Md. 38, 54, 803 A.2d 482, 491 (2002). On the other hand, because the purpose of the tort is to "provide a remedy for *otherwise unremedied* violations of public policy," *Porterfield*, 374 Md. at 423, 823 A.2d at 602 (emphasis added), the tort is not viable if the statutes that establish the public policy at issue "already provide an adequate and appropriate civil remedy for the wrongful discharge."  *Id.*; *see also Makovi*, 316 Md. at 621-26, 561 A.2d at 188-91.

Defendants contend that plaintiff's wrongful discharge claim must fail in light of *Makovi*, 316 Md. 603, 561 A.2d 179. *See* ECF 6-1 at 13. In that case, the Maryland Court of Appeals determined that "discharge motivated by employment discrimination prohibited by Title VII" and the Maryland Fair Employment Practices Act ("MFEPA"), S.G. §§ 20-601 to 20-610, cannot support a common law abusive discharge claim. *Makovi*, 316 Md. at 626, 561 A.2d at 190. This is because "the public policy sought to be vindicated by the tort is expressed in a statute which carries its own remedy for vindicating that public policy." *Id.* at 609, 561 A.2d at 182.

In sum, the tort of wrongful discharge is limited "to cases where an employee's termination contravened a clear mandate of public policy and [where] not to allow the cause of action would leave the employee without a remedy." *Newell*, 407 Md. at 647, 967 A.2d at 769. For example, in *Molesworth*, 341 Md. at 629-36, 672 A.2d at 612-16, the Maryland Court of Appeals recognized a common law cause of action for wrongful discharge of an at will employee based on sex discrimination, because the employer, based on its size, was otherwise exempt from application of the statutory prohibition against such conduct.

Title VII and MFEPA provide plaintiff with alternative civil remedies. *See Alexander v. Marriott Int'l, Inc.*, RWT-09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011) (calling MFEPA "the state law analogue of Title VII."). In this action, plaintiff brought a claim against defendants under federal and state law. ECF 1 at 9. However, as noted, Title VII and MFEPA apply only to employers with "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b); S.G. § 20-601(d). Thus, an employee can only assert a common law abusive discharge claim under Maryland common law if he has been discharged on the basis of employment discrimination by an employer with fewer than fifteen employees. *Molesworth*, 341 Md. at 637, 672 A.2d at

616 (recognizing a "common law cause of action for wrongful discharge against an employer exempted" from MFEPA).

Plaintiff has not alleged the precise number of people employed by Go-Getters.  But, plaintiff has referenced more than 15 employees in his Complaint.  Thus, it appears that Title VII and MFEPA apply, rather than common law

Furthermore, as earlier explained, I may take judicial notice of "'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"  *Goldfarb*, 791 F.3d at 508; *see* Fed. R. Evid. 201(b).  And, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web."  *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *cf. Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 Fed. Appx. 223, 227 (4th Cir. 2013) (noting that the court may take judicial notice of information on a website, "so long as the web site's authenticity is not in dispute").  However, "these facts [must be] construed in the light most favorable" to the non-movant.  *Clatterbuck*, 708 F.3d at 557 (4th Cir. 2013) (*abrogated on other grounds by Reed*, 576 U.S. at 165-67, *as recognized in Cahaly*, 796 F.3d at 405).

Of import here, Go-Getters maintains a public profile on LinkedIn, which indicates that Go-Getters employs 51 to 200 individuals.  *See Go-Getters, Inc.*, LINKEDIN, https://www.linkedin.com/company/go-getters-inc (last visited Nov. 19, 2021).  Moreover, this profile includes a link to the company's website, (http://gogetters.inc.org), which reflects a list of its staff members, including defendants Cavathas and Watson, as well as several of the other individuals described in the Complaint.  *See* ECF 1 at 14-17; *Our Staff*, LOWER SHORE CLINIC,

https://www.lowershoreclinic.org/our-team (last visited Nov. 19, 2021).[6]  And, this list suggests that Go-Getters employs more than enough individuals to render it subject to Title VII's and MFEPA's provisions.

Accordingly, based on the number of people allegedly employed by Go-Getters, Taylor may not pursue a common law tort claim against Go-Getters for wrongful discharge.  Therefore, I shall dismiss Counts 5, 7, and 9.  The Court expresses no opinion as to whether plaintiff has a viable claim under Maryland statutory law.

### IV.   Conclusion

For the reasons stated above, I shall grant the Motion.  In particular, I shall dismiss Count 1 and Count 4 as to defendants Cavathas and Watson.  I shall dismiss Counts 2 and 3, as well as Counts 5 through 11, as to all defendants.  I shall also dismiss Count 1 and Count 4 as to defendant Go-Getters, but without prejudice and with leave to amend, due within 28 day of the docketing of this Memorandum and the accompanying Order.

An Order follows, consistent with this Memorandum Opinion.


Date: December 9, 2021                                   _____/s/_____
                                                        Ellen L.  Hollander
                                                        United States District Judge

---

[6] The link posted on the Go-Getters's LinkedIn profile re-directs to a website for a company called Lower Shore Clinic, Inc. (https://www.lowershoreclinic.org/).