IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IVAN M. TAYLOR.
    *Plaintiff*,

    v.                          Civil Action No.  ELH-20-3624

GO-GETTERS, INC.
    *Defendant*.

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a motion to dismiss an Amended Complaint in an employment discrimination case.  Suit originated on December 14, 2020, when plaintiff Ivan Taylor, who was then pro se, filed a wide-ranging Complaint against his former employer, Go-Getters, Inc. ("Go-Getters"), as well as two of his former supervisors, Dimitrois Cavathas and Delores Watson.  ECF 1 (the "Complaint").

According to the Complaint, which contained eleven claims, plaintiff was subjected to a hostile work environment on account of his sex, which culminated in the termination of his employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Plaintiff also alleged violations of the Due Process Clause of the Fourteenth Amendment as well as Article 24 of the Maryland Declaration of Rights.  And, Taylor brought claims for breach of contract and wrongful discharge.

Thereafter, Watson, Cavathas, and Go-Getters jointly moved to dismiss for failure to state a claim.  ECF 6.  They advanced numerous grounds to support dismissal.  Notably, however, defendants did not seek dismissal of plaintiff's Title VII claim for failure to exhaust.

By Memorandum Opinion (ECF 13) and Order (ECF 14) of December 9, 2021, I granted defendants' motion.  However, to the extent that plaintiff's claims for violation of Title VII and

breach of contract were lodged against Go-Getters, I dismissed the claims without prejudice and with leave to amend.  *See* ECF 14.

On January 17, 2022, Taylor, through counsel, timely filed an Amended Complaint, containing two counts.  *See* ECF 19.  Count One asserts a claim for "Sexual Harassment in Violation of Title VII".  *Id.* ¶¶ 13-19.  In Count Two, Taylor states a claim for "Retaliation in Violation of Title VII."  *Id.* ¶¶ 20-24.  Plaintiff did not reassert his contract claim against Go-Getters, nor did plaintiff attempt to renew any claims against Watson or Cavathas.

Go-Getters has moved to dismiss the Amended Complaint for failure to state a claim (ECF 20), supported by a memorandum of law (ECF 20-1) (collectively, the "Motion").[1]  The Motion is accompanied by two exhibits.  ECF 20-2; ECF 20-3.  Go-Getters contends that the Amended Complaint is "fatally flawed."  ECF 20-1 at 2.  It argues that the Amended Complaint includes new allegations and a new claim—retaliation—that were not exhausted and are beyond the scope of what the Court permitted.  *Id.* at 7-15.  Taylor opposes the Motion.  *See* ECF 21.  Go-Getters has replied.  ECF 24.

No hearing is necessary to resolve the Motion.  Local Rule 105.6.  For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I.    Factual Background[2]

Taylor is a Black male.  ECF 1 at 14.  Between August 1, 2000 and approximately November 12, 2018, Taylor was employed by Go-Getters as a "Community Support Advocate."

---

[1] In the Motion, defendant appears to rely on Fed. R. Civ. P. 12(b)(6).  But, the rule is referenced only once, in a quote that appears on page 6 of ECF 20-1.

[2] To the extent relevant, I incorporate here the "Factual Background" set forth in ECF 13 at 2-7.  As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit.  *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

*See* ECF 19, ⁋⁋ 1, 6-8; *see also* ECF 20-2 at 1; ECF 20-3 at 6.  Plaintiff avers that his "work performance was always satisfactory."  ECF 19, ⁋ 2.

However, plaintiff alleges that between May 2018 and November 2018, he was subjected to repeated instances of sexual harassment by Watson.  *See id.* ⁋⁋ 3(A)-3(K).  Beginning on May 23, 2018, "Ms. Watson informed [Taylor] that there [was] a target on his back and that he was going to be fired."  *Id.* ⁋ 3(A).  Watson "then told the Plaintiff that she [could] help Plaintiff keep his job if he starts having sex with her."  *Id.*  Taylor refused.  *Id.*  Watson then asked if plaintiff "did not want to have sex with her because she's not a White Woman[.]"  *Id.*

Approximately five days later, on May 28, 2018, Watson again "asked Plaintiff to begin a sexual relationship" with her.  *Id.* ⁋ 3(B).  Taylor again declined.  *Id.*  Watson allegedly "went on to say[:] 'I will help you keep your job if you have sex with me.'"  *Id.*

That same day, plaintiff informed another Go-Getters employee, Billie Jo Ross, "that Delores Watson was sexually harassing him."  *Id.* ⁋ 3(C).  "Ms. Ross informed Plaintiff to avoid Watson as much as he could" and cautioned plaintiff not to "succumb to her advances."  *Id.*  Thereafter, Taylor and Ms. Ross had numerous discussions in which plaintiff "informed Ms. Ross that Watson was still making sexual advances and offering to save his job in exchange for sexual favors."  *Id.*

According to Taylor, he had weekly, one-on-one meetings with Watson throughout the month of June 2018, during which "Ms. Watson made various sexually charged comments."  *Id.* ⁋ 3(D).  For instance, Watson told Taylor: "'[W]e should start having sex, no one will know.'"  *Id.*  And, plaintiff claims that Watson "asked Plaintiff if he wanted to see [her breasts]."  *Id.*  Plaintiff denied Watson's advances, stressing that it "would be inappropriate because she was [his] supervisor."  *Id.*

On July 17, 2018, Watson once again asked "Plaintiff to start a sexual relationship," but Taylor "refused." ECF 19, ¶ 3(E). "Ms. Watson then told [Taylor] that he was going to lose his job" but that "she can protect him." *Id.* A similar interaction allegedly occurred on August 8, 2018, when Watson asked plaintiff "if he was ready to start a sexual relationship with her." *Id.* ¶ 3(F). Again, plaintiff refused. *Id.*

Plaintiff claims that on two occasions in the fall of 2018, Watson "directed" plaintiff to help her with various personal errands. *See id.* ¶¶ 3(H), (I). In particular, on September 19, 2018, Watson "directed the Plaintiff to drive her, in a company vehicle, to a private residence in Fruitland, Maryland." *Id.* ¶ 3(H). Taylor claims: "During the trip, Ms. Watson made sexual advances toward the Plaintiff in the vehicle." *Id.* "Thereafter, Plaintiff and Ms. Watson loaded the furniture she purchased in the company vehicle and took it to her home." *Id.* Plaintiff states: "This all occurred during work hours." *Id.*

Two days later, on September 21, 2018, "Watson directed the Plaintiff to drive her, in a company vehicle, during work hours to Sharptown, Maryland to pick up some furniture for her." *Id.* ¶ 3(I). Taylor alleges: "During the trip Ms. Watson made sexual advances towards Plaintiff in the car," which he again rejected. *Id.* And, "Plaintiff delivered the furniture to Ms. Watson's residence." *Id.*

Taylor also claims that Watson "called [him] at home numerous times" and had conversations with him that "were always about sex . . . ." *Id.* ¶ 3(G). For instance, "[o]n or about October 15, 2018[,] Delores Watson called Plaintiff at home and asked about his trip to Milburns Orchards in Elkton[,] Maryland with his daughter." *Id.* ¶ 3(J). According to plaintiff, Watson "wanted to know if Plaintiff would take her to Milburns Orchards" and suggested "taking Plaintiff's daughter and her 2 daughters." *Id.* Taylor rejected the idea. *Id.* Watson then asked

plaintiff if they "could become romantically involved." ECF 19, ⁋ 3(J). Taylor declined and ended the telephone conversation. *Id.*

Soon thereafter, "Watson called back, but the Plaintiff asked her to stop calling and harassing him at home." *Id.* Watson "responded that this time [it was] work related." Accordingly, Taylor "listened to her brief work related information and ended the conversation." *Id.*

On November 8, 2018, plaintiff asked Watson "to please stop calling and harassing him when he is off from work[.]" *Id.* ⁋ 3(K). Watson then asked Taylor "whether he noticed that she did not call him on his time off with work related issues." *Id.*

Two days later, on Saturday, November 10, 2018, Taylor "received a call from Ms. Watson." *Id.* ⁋ 4. She asked about plaintiff's "mother being in the hospital" and then began "talking about work related issues . . . ." *Id.* Plaintiff told Watson that "his mother is not doing well" and cautioned that if she "continues sexually harassing him and calling him after hours, he was going to resign." *Id.* Additionally, Taylor told Watson that, upon his return to work, he intended "to speak with her about his possible resignation." *Id.* And, he informed Watson that he "was going to file a Sexual Harassment complaint with Pam Karpin," another Go-Getters official. *Id.* Critically, Taylor states that he did not tell Watson that he was resigning. *Id.* ⁋ 5.

Nonetheless, on November 12, 2018, "Watson informed Pam Karpin . . . that Plaintiff resigned over the weekend." *Id.* ⁋ 6. And, plaintiff claims that Watson did so "intentional[ly] and malicious[ly]" for "the sole purpose of injuring [him]." *Id.* ⁋ 7.

Thereafter, "Plaintiff spoke with Pam Karpin" and "informed her of the events surrounding his possible resignation comments." ECF 19, ⁋ 8.[3]  Karpin "stated that she did not believe him." *Id.*  And, "Plaintiff was informed [that] his employment at Go-getters [sic] was over."  *Id.*  Further, Karpin "instructed Plaintiff to turn in all property belonging to Go-getters [sic] immediately."  *Id.*

Taylor asserts: "As a result of the actions of Delores Watson, [he] . . . suffer[ed] a loss of wages, severe emotional distress including, but not limited to, emotional pain, anxiety, depression, humiliation, and embarrassment."  *Id.* ⁋ 9.  He seeks, *inter alia*, compensatory and punitive damages.  *Id.* at 5-6.

Plaintiff "contacted the Maryland Commission on Civil Rights ('MCCR' or the 'Commission') to file a Charge of Discrimination."  *Id.* ⁋ 10.  In particular, Taylor claims that he "reported to the MCCR that he was sexually harassed by his supervisor who repeatedly requested that he engage in sexual activity with her, that he was treated differently than similarly situated female employees, and that he was terminated when he refused his supervisor's sexual advances." *Id.*  According to plaintiff, the "MCCR prepared a Charge of Discrimination which the Plaintiff signed on March 7, 2019."  *Id.*; *see* ECF 20-2 (the "Charge").  The Charge "was filed with MCCR and the Equal Employment Opportunity Commission (['']EEOC['])."  ECF 19, ⁋ 10.  Notably, plaintiff filed the Charge without the assistance of counsel.

Go-Getters included a copy of the Charge with the Motion.  *See* ECF 20-2 at 1.  In the Charge, plaintiff asserted only that he was subjected to discrimination based on sex.  *Id.*  He did not check the box on the form for a claim of retaliation.

Taylor stated in the Charge, as follows, *id.*:

---

[3] The Amended Complaint does not specify the date on which plaintiff spoke with Karpin about his purported resignation.  But, exhibits appended to the Motion indicate that plaintiff's employment with Go-Getters ended on November 12, 2018.  *See* ECF 20-2 at 1; ECF 20-3 at 6.

    I.      I began my employment with [Go-Getters] on August 1, 2000, as a Community Support Advocate.  On November 12, 2018, I was discharged, however, similarly situated employees (women) were not discharged.

    II.    Pam Karpin, Chief Human Resources Officer[,] stated I resign [sic] per Delores Watson, Supervisor.

    III.   I believe I was discriminated against because of my sex (male) with respect to discharge in violation of Title VII of the Civil Rights Act of 1964, as amended.

On January 24, 2020, Taylor amended his charge.  *See* ECF 20-3 at 6-8 (the "Amended Charge"); *id.* at 9-10.  Again, he did so without the assistance of counsel.  Taylor checked only the box indicating discrimination based on sex; the box for "Retaliation" is unchecked.  *Id.* at 6.  The Amended Charge states, *id.* at 6-7:

    I.      I began my employment with [Go-Getters] on August 1, 2000, as a Community Support Advocate.  On November 12, 2018, I was discharged, however, similarly situated employees (women) were not discharged.

    II.    Pam Karpin, Chief Human Resources Officer[,] stated I resigned per Delores Watson, Supervisor.

    III.   It should also be noted, from on or about July 1, 2018 to on or about November 12, 2018, Ms. Watson continuously subjected me to gender based discriminatory harassment, in the form of, but not limited to, bullying me to perform male-oriented tasks at her personal residence during work hours.  Ms. Watson forced me to repair her push lawn mower as well as transport and set up furniture at her personal home.  Ms. Watson stated [that] "I need a strong man to help me load this furniture and take it to my house." She further stated[:] "You have a target on your back and you have to do this or I can fire you because Jennifer Mahoney (Director) and Dimitrios [sic] Cavathas (CEO) don't like you."

    IV.   I believe I was discriminated against because of my sex (male) with respect to discharge and harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

Notice of the Amended Charge was provided to counsel for Go-Getters on January 28, 2020.  ECF 20-3 at 1.

According to plaintiff, the "EEOC issued its Notice of Right to Sue letter on September 22, 2020." ECF 19, ⁋ 11.[4]  Suit followed on December 14, 2020.  ECF 1.

## II.       Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 305; *Paradise Wire & Cable*, 918

---

[4] The parties have not provided the Court with a copy of this letter.

F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting  *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605; *see Papasan v. Allain*, 478 U.S. 265, 286 (1986);

*Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v.*

*Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).   In contrast, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"   *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

And, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."   *Goines*, 822 F.3d at 167.   Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."   *Id.*   Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true."   *Id.*

Moreover, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.   *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).   In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."   *Goines*, 822 F.3d at 166

(citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___U.S.___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As mentioned, the Motion is supported by two exhibits: the Charge (ECF 20-2) and the Amended Charge.  ECF 20-3.  "In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions."  *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021) (citing *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)).  Further, neither party disputes the authenticity of the

Charge or the Amended Charge, nor has plaintiff otherwise taken issue with the Court's consideration of the exhibits. Therefore, I may consider these exhibits in resolving the Motion.

### III.   Discussion

The Amended Complaint contains two counts. In Count One, plaintiff alleges that Watson sexually harassed him, thereby subjecting him to a hostile work environment, in violation of Title VII. ECF 19, ¶¶ 13-18. And, Count Two is styled as a claim for retaliation, also in violation of Title VII. *Id.* ¶¶ 20-24.

Defendant argues that both counts are subject to dismissal. *See* ECF 20-1 at 7-15. Concerning Count One, Go-Getters maintains that it must be dismissed for failure to exhaust. *Id.* at 7-11. With respect to Count Two, defendant claims that it is not properly before the Court because plaintiff did comply with the procedural requirements of the federal rules. *Id.* at 11-12. Further, Go-Getters avers that the Court should dismiss Count Two for failure to exhaust and, in the alternative, on the ground that it is untimely. *Id.* at 12-14.

### 1.   Title VII Generally

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. This proscription is "often referred to as the 'disparate treatment' (or 'intentional discrimination') provision . . . ." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). The Supreme Court has referred to discrimination based on one of the five characteristics specified above as "status-based discrimination." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351 (2013). And, "terms, conditions or privileges of employment" is "an expansive concept." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) (quotation marks and citation omitted).

To state a prima facie claim for hostile work environment under Title VII, the plaintiff must allege that there was: "'(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race[, color, sex, religion, or protected activity]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)).

Title VII also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. 42 U.S.C. § 2000e-3. In 42 U.S.C. § 2000e-3, it states: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *See, e.g.*, *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654 (4th Cir. 2021); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021); *Kitlinski v. United States Dep't of Justice*, 994 F.3d 224, 232 (4th Cir. 2021); *Evans v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F.3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto*, 786 F.3d at 298; *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

To state a prima facie case for retaliation, a plaintiff must allege "'that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the

employer's adverse action.'" *Okoli*, 648 F.3d at 223 (citation omitted); *see Sempowich*, 19 F.4th at 653; *Roberts*, 998 F.3d at 122; *Kitlinski*, 994 F.3d at 232; *Strothers*, 895 F.3d at 327; *Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 217 (4th Cir. 2016); *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699 F. App'x 146, 151 (4th Cir. 2017); *Foster v. Univ of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

Before filing suit under Title VII, however, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union,* 491 U.S. 164 (1989), superseded on other grounds by 42 U.S.C. § 1981(b); *see also McCray v. Md. Dep't of Trans.*, 662 F. App'x 221, 224 (4th Cir. 2016). However, exhaustion under Title VII is not jurisdictional. It is, instead, a "claim-processing rule [ ] that must be timely raised to come into play." *Fort Bend Cty. v. Davis*, ___U.S.___, 139 S. Ct. 1843, 1846, 1850 (2019). Although a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, it advances the "twin objectives" of "protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (internal quotation marks, alterations, and citation omitted). If an employee fails to exhaust his administrative remedies, he is generally barred from filing suit. *See, e.g., Miles v. Dell*, 429 F.3d 480, 491 (4th Cir. 2005); *Bryant v. Bell Atl. Md., Inc*., 288 F.3d 124, 132 (4th Cir. 2002).

Moreover, the administrative exhaustion process has substantive effect. Generally, it limits the scope of a plaintiff's federal lawsuit to those parties and claims contained in the administrative charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012); *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Thus, "when the claims in [the] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Chacko*, 429 F.3d at 508). To illustrate, the Fourth Circuit has stated that a "'claim will . . . typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits.'" *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 161 (4th Cir. 2018) (quoting *Chacko*, 429 F.3d at 509) (ellipsis in *Nnadozie*).

That said, the EEOC charge "'does not strictly limit a . . . suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination[.]'" *Miles*, 429 F.3d at 491 (citation omitted); *see Chacko*, 429 F.3d at 512. And, of relevance here, because "EEOC charges often are not completed by lawyers," the Fourth Circuit has instructed courts to "construe them liberally." *Chacko*, 429 F.3d at 509; *see Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). Thus, a federal court may hear a claim that was not presented to the EEOC so long as it is "'reasonably related'" to the plaintiff's EEOC charge "'and can be expected to follow from a reasonable administrative investigation . . . .'" *Sydnor*, 681 F.3d at 594 (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000)); *see also Stewart*, 912 F.3d at 705.

## 2.  Analysis

### A.  Count One

Go-Getters argues that Count One is subject to dismissal on the ground that it is "barred by Plaintiff's failure to raise the allegations which support that claim in his Charge of Discrimination and the amendment thereto." *Id.* at 9.  Defendant notes that Taylor "did not even mention any harassment which was sexual in nature until filing his Amended Complaint in this Court.[ ]" *Id.*  And, in defendant's view, "[b]ecause those allegations were not even suggested in Plaintiff's administrative complaints, Plaintiff failed to administratively exhaust those allegations, and Plaintiff's failure to do so is dispositive." *Id.* at 10.

In response, plaintiff contends, albeit with little substantive analysis, that the allegations contained within Count One are "factually related" to those presented by the Amended Charge. ECF 21 at 2 (emphasis omitted).  Thus, he avers: "It is reasonable to expect that a reasonable investigation by the EEOC and/or the MCCR, would have uncovered the harassing sexual requests by Ms. Watson." *Id.* at 3.

Go-Getters rejects this contention, maintaining that Count One is predicated on "an entirely different set of interactions" than those included in the Amended Charge.  ECF 24 at 2.  In particular, plaintiff points out that the Amended Charge is devoid of any allegation that Watson "told [Taylor] to look at her breasts" or that Taylor "had to have sex with [Watson] to keep his job." *Id.*  Thus, as defendant sees it, these "new and contradictory factual allegations were not exhausted in [plaintiff's] administrative charges . . . ." *Id.*

In my view, the allegations with respect to Count One are reasonably related to those asserted by the complainant in the Amended Charge, when he was self-represented.  Both Count One and the Amended Charge center on plaintiff's claim that he was harassed by Watson on

account of his sex, which ultimately resulted in the termination of his employment from Go-Getters. *See* ECF 19, ¶¶ 3-8; ECF 20-3 at 6-7.  Moreover, the allegations underlying Count One took place almost entirely within the same period of time identified in the Amended Charge.  *See* ECF 19, ¶¶ 3(A)-3(K); ECF 20-3 at 6-7.  Indeed, at least some of the alleged events on which Count One relies (*i.e.* Watson directed plaintiff to help her move furniture to her personal residence) are expressly referenced in the Amended Charge.  *See* ECF 19, ¶¶ 3(H), 3(I)), ECF 20-3 at 7.

To be sure, the most lurid details that undergird Count One are not expressly included in the Amended Charge.  But, because the Amended Charge was not drafted by a lawyer, I must construe it liberally.  *See Chacko*, 429 F.3d at 509.  And, in light of the foregoing, it is plain that Count One is related to the assertions contained within the Amended Charge.  Indeed, this case does not "involve shifting sets and a rotating cast of characters that would have deprived [defendant] of notice of the allegations against it." *Sydnor*, 681 F.3d at 595 (citing *Chacko*, 429 F.3d at 511).  Rather, the crux of plaintiff's complaint is the same in both Count One and the Amended Charge: discriminatory and harassing conduct by Watson based on Taylor's sex.

Accordingly, as I see it, the assertions on which Count One relies share a sufficiently close nexus with the assertions contained in the Amended Charge such that they could be "'expected to follow from a reasonable administrative investigation.'" *Sydnor*, 681 F.3d at 594 (quoting *Smith*, 202 F.3d at 247); *see Stewart*, 912 F.3d at 705 (explaining that "the 'scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge . . . .") (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 390 n.6 (4th Cir. 1982)).  Thus, I shall deny the Motion as to Count One.

### B.  Count Two

In ECF 13 and ECF 14, I granted plaintiff leave to amend as to Count One and Count Four. Count One of ECF 1 was titled "Title VII Violation."  The Amended Complaint followed.

Go-Getters urges the Court to dismiss Count Two of the Amended Complaint because plaintiff did not properly seek leave of Court to assert this claim in his amended pleading and the amendment contravenes Fed. R. Civ. P. 15.  ECF 20-1 at 11-12.  Defendant also insists that Count Two is subject to dismissal for failure to exhaust and, in the alternative, because it is untimely.  *Id.* at 12-14.  And, defendant claims that the amendment exceeds the scope of the Order.  *Id.* at 2.

As to Count Two, the retaliation claim, plaintiff asserts that the claim is reasonably related to the assertions contained within the Amended Charge, and thus exhaustion presents no bar to this claim.  ECF 21 at 4.  Further, with respect to defendant's timeliness argument, Taylor maintains that Count Two "is reasonably related to the language of the Charge of Discrimination" and therefore "the claim in the Amended Complaint is timely."  *Id.* at 5.

Go-Getters responds that plaintiff's arguments are wide of the mark because Count Two "presents . . . a wholly new cause of action."  ECF 24 at 7.  In its view, plaintiff "failed to exhaust his administrative remedies for his claim of retaliation for refusal to have sex with his supervisor." *Id.* at 9.  Defendant adds that Taylor's "newly-minted allegations do not relate back to his initial Complaint" and thus "are time-barred and should be dismissed with prejudice."  *Id.* at 7.

As discussed, the Court previously dismissed plaintiff's claim for sex discrimination (*see* ECF 1 at 9), without prejudice and with leave to amend.  *See* ECF 13 at 27, 40; *see also* ECF 14. However, as defendant points out (ECF 20-1 at 11-12), the original Complaint did not advance a claim for retaliation.  *See* ECF 1.

Nevertheless, I need not resolve whether plaintiff is entitled under the Federal Rules of Civil Procedure or my Order to add a claim for retaliation.  This is because it is readily apparent that Count Two is subject to dismissal for failure to exhaust.

As discussed above, the Amended Charge asserted a claim for discrimination based only on sex.  ECF 20-3 at 6-7.  Notably, in completing the Amended Charge, Taylor did not check the box for retaliation.  *See id.* at 6.  Nor do the assertions in the Amended Charge, read generously, suggest that plaintiff was subjected to retaliation within the meaning of Title VII.  *See id.* at 6-7.

Certainly, the Amended Charge must be liberally construed.  *See Chacko*, 429 F.3d at 509.  But, in this case, the allegations included in the Amended Charge cannot plausibly be read as suggesting that the alleged discriminatory conduct was retaliatory.

Therefore, I shall dismiss Count Two for failure to exhaust.  *See Miles*, 429 F.3d at 492 (dismissing retaliation claim where plaintiff neglected to "check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation"); *Wicks v. La'Car of N.C., Inc.*, 20-cv-934, 2021 WL 5177710, at *4 (W.D.N.C. Nov. 8, 2021) (finding that a charge, which alleged that within days of plaintiff informing her employer that she was pregnant, her employment was threatened and she was soon thereafter discharged, put employer on notice of claim for sex discrimination, but not retaliation); *see also Lewis v. Antwerpen Hyundai of Clarksville*, RDB-18-1393, 2018 WL 5809708, at *6-7 (D. Md. Nov. 5, 2018) (dismissing retaliation claim for failure to exhaust where "neither the Plaintiff's allegations in her Charge nor the Charge itself gave [defendant] any notice that [plaintiff] was bringing a retaliation claim"); *Ciocola v. Balt. City Bd. of Schools Comm'r*, CCB-15-1451, 2017 WL 4280729, at *7 (D. Md. Sept. 27, 2017) (same).

### IV.   Conclusion

In light of the foregoing, I shall deny the Motion as to Count One but grant the Motion with respect to Count Two.

An Order follows, consistent with this Memorandum Opinion.

Date: April 15, 2022                             _____/s/_____

                                                 Ellen L.  Hollander
                                                 United States District Judge